**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **3:24-CR-90** |
| | : | **(JUDGE MARIANI)** |
| PATRICK RUSSIN, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Here, the Court considers the issue of whether the Government's post-plea

amendment of the specific conviction upon which it relies to enhance Defendant's sentence

pursuant to 21 U.S.C. § 851(a) satisfies statutory requirements.  Following the parties'

briefing of the issue on September 17, 2025, (Docs. 212, 214), the Court held a hearing on

September 18, 2025, the date of the scheduled sentencing.  (*See* Docs. 189, 219.)  By

Order of September 18, 2025, sentencing was continued generally pending disposition of

the 21 U.S.C. § 851 issue.  (Doc. 220.)  For the reasons that follow, the Court concludes: 1)

the Government's post-plea Amended Information of Prior Conviction (Doc. 210) does not

satisfy the requirements of 21 U.S.C. § 851(a)(1); and 2) the Government's pre-Plea

Information (Doc. 86) does not satisfy the requirements of 21 U.S.C. § 851(a)(1).

## II. BACKGROUND

On April 9, 2024, Defendant, Jamie Smicherko, Ryan Medar, and Carlos Laurel were charged in a seventeen-count Indictment.  Defendant was named in four counts: Count 1 – Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846; Count 14 – Distribution of Cocaine in violation of 21 U.S.C. § 841(a)(1); Count 15 - Distribution of Cocaine in violation of 21 U.S.C. § 841(a)(1); and Count 16 – Distribution of Methamphetamine in violation of 21 U.S.C. § 841(a)(1).  As to the quantity of controlled substances involved in the conspiracy in Count 1, the Indictment states:

> The amount of controlled substances involved in the conspiracy that is attributable to each of the defendants as a result of his or her own conduct, and the conduct of other co-conspirators reasonably foreseeable to him or her, is as follows: . . . **PATRICK RUSSIN**: in excess of 50 grams of a mixture and substance containing a detectable amount of methamphetamine and an unspecified amount of cocaine, both Schedule II controlled substances.

(Doc. 1 at 2.) Count 1 further states that

> [b]efore **PATRICK** RUSSIN committed the offense charged in this Count, **PATRICK RUSSIN** had a final conviction for a serious violent felony, namely a conviction under 18 Pa. C.S.A. § 3701(a)(1)(ii), Robbery, (Case No. CP-40-CR-3356-2003), for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.
>
> All in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(B), and (C).

(Doc. 1 at 2.)

Count 16, Distribution of Methamphetamine, attributes "50 grams and more of a mixture and substance containing a detectable amount of methamphetamine" to Patrick Russin.  (*Id.* at 13.)  Count 16 also contains the same language about the Pennsylvania felony conviction under 18 Pa. C.S. § 3701(a)(1)(ii).  (*Id.*)

On August 12, 2024, the Government filed the Information of Prior Conviction of Controlled Substance Offense (Doc. 86) which states:

> Pursuant to 21 U.S.C. § 851(a), the United States Attorney for the Middle District of Pennsylvania hereby informs this Honorable Court and the Defendant that the United States intends to rely upon the following prior conviction of the Defendant in support of the imposition in sentencing of increased punishment by reason of such conviction:
>
> > 1) The defendant has a prior conviction for a "serious violent felony" offense (*See* 18 U.S.C. § 841(b)(1)(B)) on the charge of Robbery, in violation of 18 Pa. C.S.A. §3701(a)(1)(ii), in the Court of Common Pleas of Luzerne County, case number CP- 40-CR-3356-2003. On or about December 22, 2011, the defendant was sentenced to serve between 36 to 72 months in prison for this offense.
> >
> > 2) Counts 1 and 16 of the Indictment charge the defendant with Conspiracy to Distribute and Possess with Intent to Distribute more than 50 grams of methamphetamine, a Schedule II controlled substance, and the Distribution of more than 50 grams of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841 (b)(1)(B). Accordingly, the filing of this Information of Prior Conviction for a "serious violent felony" offense enhances the penalties for Counts 1 and 16 of the Indictment to a mandatory minimum term of imprisonment of 10 years, up to a maximum term of imprisonment of life, a maximum fine of $8,000,000, and a period of supervised release consisting of a minimum of 8 years and up to life.

(Doc. 86 at 1-2.)

In his April 29, 2025, Plea Agreement, Defendant agreed to plead guilty to Count 1 of the Indictment which charged him "with a violation of Title 21, United States Code, § 846, Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, namely 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine and an unspecified amount of cocaine, both Schedule II controlled substances." (Doc. 154 ¶ 1.)  Paragraph 2 of the Plea Agreement states: "Mandatory Minimum Sentence. Count 1 carries a mandatory minimum period of imprisonment of 10 years." (*Id.* ¶ 2.)

At the May 2, 2025, Change of Plea Hearing, Defendant's attorney advised the Court that he had discussed the mandatory minimum sentence associated with the charges with Defendant and that Defendant was pleading guilty to the charge and the enhancement pursuant to 21 U.S.C. § 851.  (5/2/25 Hr'g Tr. 9:23-25.)  The Assistant United States Attorney's statement of what the evidence would show included the following:

> The government would also establish at trial or at sentencing that prior to the conduct which was described in count one of the indictment the defendant had a final conviction for a serious violent felony, namely, a conviction under Title 18 Pennsylvania C.S.A. Section 3701 subsection A. 1 lower case i i of robbery, case number CP-40-CR-356-2003 for which Mr. Russin served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within15 years of the commencement of the instant offense.

(5/2/25 Hr'g Tr. 24:15-22.)  Defendant entered his plea of guilty on May 2, 2025, and sentencing was scheduled for August 28, 2025. (Docs. 156, 159.)

The Presentence Investigation Report ("PSR") was filed on August 13, 2025.  (Doc. 192.)  The "Charge(s) and Conviction(s)" section of the PSR includes information about Defendant's August 12, 2024, Information of Prior Conviction of Controlled Substance Offense (Doc. 86): "On August 12, 2024, the Government filed an Information of Prior Conviction pursuant to 21 U.S.C. § 851(a) and referenced a prior conviction for a serious violent offense (paragraph 35).  The Information enhanced the statutory penalties of Count 1 of the Indictment regarding Patrick Russin."  (PSR ¶ 3.)  The PSR also identifies the following sentencing options:

> 55. Statutory Provisions: The minimum term of imprisonment is 10 years and the maximum term is life. 21 U.S.C. §§ 841(b)(1)(B) and 851(a).

> 56. Guideline Provisions: Based upon a total offense level of 25 and a criminal history category of III, the guideline imprisonment range is 70 to 87 months. However, the statutorily required minimum sentence of 10 years is greater than the maximum of the applicable guideline range; therefore, the guideline term of imprisonment is 120 months. USSG §5G1.1(b).

(PSR ¶¶ 55, 56.)

The First Addendum to the PSR states that neither Defendant nor the Government had any objections to the PSR. (Doc. 193.)  However, referencing paragraphs 3 and 35 of the PSR,[1] Defendant raised an objection to the enhancement pursuant to 21 U.S.C. § 851(a) in his September 9, 2025, Sentencing Memorandum (Doc. 205 at 2-5):

---

[1] Paragraph 35 is in "The Defendant 's Criminal History" section of the PSR. (PSR at 8.)  The paragraph provides details of Defendant's October 31, 2003, arrest on state charges which include the robbery that serves as the basis for the Government's August 12, 2024, Information filed pursuant to 21 U.S.C. § 851. (PSR ¶ 35.)

The Defendant has requested an objection to the prior conviction enhancement pursuant to 21 U.S.C. §851(a). His reasoning for the objection is that the conviction is nearly 20 years old; specifically, the offense occurred in May of 2003, and the Defendant pled to the offense later that same year. Furthermore, the Defendant argues that the Government should not be seeking this enhancement because he cooperated substantially in a homicide investigation and trial; which led to the successful homicide prosecution of Hugo Selenski. The Defendant further argues that the enhancement hinders the Court from sentencing the Defendant. The Defendant's guidelines fall well below the 10 year mandatory minimum sentence and that his sentence should be determined by the Court, not the Government attorneys.

Moreover, the Defendant claims vindictive prosecution. . . . In this case, on or about November 11, 2023, the Defendant appeared before the Court to enter a plea to a drug trafficking violation. The Defendant was not indicted at the time of this plea; however, the plan was for him to waive his right to be indicted and enter a plea to one count for possession with intent to distribute a controlled substance, namely fentanyl. This guilty plea did not include any enhancements for prior violent felonies. The Defendant had signed an agreement; however, elected not to proceed with the guilty plea during the hearing.

Since the Defendant elected not to proceed with a guilty plea to a criminal complaint, the Government informed him that they would be indicting him. The Defendant was never indicted for the fentanyl charge and instead was indicted on these charges which included the section 851 enhancement. The Defendant notes that the same law enforcement officers from the ATF were responsible for his last criminal complaint involving fentanyl and this recent indictment which includes the section 851 enhancement, which began in late 2023 (almost immediately after the Defendant elected not to plead guilty to the fentanyl charge).

The Defendant claims that the prosecutors are being vindictive for seeking the section 851 enhancement and as such, is another reason why the enhancement should not apply.

(Doc. 205 at 2-5.)

The Second Addendum to the PSR, filed on September 10, 2025, addresses

Defendant's objection and concludes that the arguments in the Sentencing Memorandum

do not warrant a withdrawal of the Information of Prior Conviction. (Doc. 206 at 1.)

The Government's Sentencing Memorandum, filed on September 11, 2025,

addresses Defendant's objection and provides information about documents received from

a U.S. Probation Officer on September 10, 2025. (Doc. 208 at 5-10.)

> [O]n September 10, 2025, the U.S. Probation Officer provided the Government with additional filed documents associated with Defendant Russin's prior conviction under Case No. 3356-2003, namely the criminal Information itself, and not just the certified judgement of conviction which had been in the Government's possession. In those documents, the subsection of Robbery which the Defendant pled guilty to was clearly identified as 18 Pa. C.S.A. §3701(a)(1)(i), not §3701(a)(1)(ii) as alleged in the Indictment and the Information of Prior Conviction filed in this case.
>
> The Information under Case No. 3356-2003 further demonstrates that Defendant Russin was also found guilty of two counts of Criminal Homicide under 18 Pa. C.S.A. 2501(a), as well as conspiracy and two counts of abuse of a corpse.

(Doc. 208 at 5-6.)

After setting out the framework relevant to the determination of whether a previous

conviction is a "serious violent felony" for purposes of the sentencing enhancement under

21 U.S.C. § 841(a)(1)(B), the Government concludes: 1) "18 Pa. C.S.A. § 3701(a)(1)(ii) is a

serious violent felony for purposes of sentencing enhancements under U.S.S.G. 2K2.1(a)"

(Doc. 208 at 6); 2) the "Third Circuit has not, to the Government's knowledge, ruled that

subsection §3701(a)(1)(i) is a serious violent felony for purposes of sentencing

7

enhancements under 21 U.S.C. 841([b])(1)(B)" (Doc. 208 at 6); 3) "[t]he Third Circuit has

also found that the two criminal homicide convictions to which Defendant Russin was also

convicted of under Case No. 3356-2003, are crimes of violence" (Doc. 208 at 7); 4) "the

defendant does not argue that he does not have a prior serious violent felony that would

increase his mandatory minimum sentence" (Doc. 208 at 8); and 5) "the increased

sentencing enhancements should apply to the defendant as he was on notice of a qualifying

serious violent felony associated with his prior convictions in Case No. 3356-203" (Doc. 208

at 9-10).

On September 12, 2025, the Government filed the Amended Information of Prior

Conviction. (Doc. 210.)  The Information states in pertinent part:

> 2) On September 10, 2025, after the Defendant pleaded guilty and having
> previously agreed that he had a such a prior conviction to Robbery under
> §3701(a)(1)(ii), newly reviewed *Shephard* documents established that the
> Defendant's Robbery conviction under case No. CP-40-CR-3356-2003, was to
> 18 Pa. C.S.A. §3701(a)(1)(i), not §3701(a)(1)(ii). In the same criminal case, the
> Defendant was also convicted of two counts of Criminal Homicide, in violation
> of 18 Pa. C.S.A. §2501(a). The Defendant was sentenced to between 120
> months' and 240 months' imprisonment on the Criminal Homicide convictions,
> to run concurrently to his sentence on the Robbery convictions. The
> Government hereby amends its prior Information and gives notice to the Court
> and the Defendant that the Government will rely upon the defendant's prior
> Criminal Homicide convictions, not the Robbery convictions, in support of the
> imposition in sentencing of increased punished by reason of such convictions.

> 3) Counts 1 and 16 of the Indictment charge the defendant with Conspiracy to
> Distribute and Possess with Intent to Distribute more than 50 grams of
> methamphetamine, a Schedule II controlled substance, and the Distribution of
> more than 50 grams of methamphetamine, a Schedule II controlled substance,
> in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841 (b)(1)(B). Accordingly, the
> filing of this Amended Information of Prior Conviction for a "serious violent

8

felony" offense enhances the penalties for Counts 1 and 16 of the Indictment to a mandatory minimum term of imprisonment of 10 years, up to a maximum term of imprisonment of life, a maximum fine of $8,000,000, and a period of supervised release consisting of a minimum of 8 years and up to life.

(Doc. 210 ¶¶ 2, 3.)

On September 16, 2025, the Court issued an order directing the parties to brief the issue of the validity of the Government's Amended Information of Prior Conviction and advised the parties that the Court would hold a hearing on the issue if necessary. (Doc. 211 at 2.) The parties filed the required briefs on September 17, 2025, and the Government filed a supplemental brief on the same date. (Docs. 212, 214, 216.) Based on the parties' arguments therein, the Court held oral argument on the issue on September 18, 2025, the date scheduled for sentencing. (*See* 9/18/25 Hr'g Tr. 2:3-12.) After setting out the legal framework for the issue and hearing the parties' arguments, the Court determined that Defendant would not be sentenced until the issue was further considered and ruled upon. (*Id.* 31:1-8.) On September 18, 2025, the Court issued an Order continuing Defendant's sentence generally. (Doc. 220.)

### III. ANALYSIS

The issue of the propriety of amendment of the August 12, 2024, Information (Doc. 86) raises two questions: 1) whether the Government's Amended Information of Prior Conviction (Doc. 210) is consistent with the requirements of 21 U.S.C. § 851(a)(1) which provides that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence," *id*.; and 2) whether the August 12, 2024, Information (Doc. 86)

provided reasonable notice to Defendant of the particular crimes of conviction upon which

the Government now relies, i.e., two criminal homicide convictions.  The Government

primarily asserts that amendment of the Information is allowed under § 851(a)(1) because

the Information (Doc. 86) contained a clerical error and the Government filed the Amended

Information of Prior Conviction (Doc. 210) before sentencing.  (*See, e.g.,* Doc. 212 at 9.)

The Government also asserts that the August 12, 2024, Information (Doc. 86) satisfied the §

851 notice requirements.  (*See, e.g.*, 9/18/25 Hr'g Tr. 18:7-18.)  Defendant argues that the

Government failed to give proper notice pursuant to § 851(a)(1) and this requirement should

not be waived.  (Doc. 214 at 6.)  The Court concludes the Government has not satisfied its

burden of showing that the misidentification of the crime of conviction upon which it relied in

the August 12, 2024, Information was a clerical error or that the August 12, 2024,

Information satisfies the notice requirements of 21 U.S.C. § 851(a)(1).

     With his guilty plea, Defendant was convicted of a violation of 21 U.S.C. § 846 -- 21

U.S.C. § 841(a)(1) was the crime underlying the conspiracy and the penalties set out in 21

U.S.C. § 841(b)(1)(B) were applicable to his sentence.  Pursuant to § 841(b)(1)(B)(viii),

Defendant's conviction for 50 grams and more of a mixture and substance containing a

detectable amount of methamphetamine made him subject to the following: "If any person

commits such a violation after a prior conviction for a serious drug felony or serious violent

felony has become final, such person shall be sentenced to a term of imprisonment which

may not be less than 10 years."  21 U.S.C. § 841(b)(1)(B)(viii).

Because Defendant is subject to this increased punishment, 21 U.S.C. § 851 controls

the "[p]roceedings to establish prior convictions." (*Id.*)  Section 851(a)(1) provides:

> No person who stands convicted of an offense under this part shall be
> sentenced to increased punishment by reason of one or more prior convictions,
> unless before trial, or before entry of a plea of guilty, the United States attorney
> files an information with the court (and serves a copy of such information on
> the person or counsel for the person) stating in writing the previous convictions
> to be relied upon. Upon a showing by the United States attorney that facts
> regarding prior convictions could not with due diligence be obtained prior to trial
> or before entry of a plea of guilty, the court may postpone the trial or the taking
> of the plea of guilty for a reasonable period for the purpose of obtaining such
> facts. Clerical mistakes in the information may be amended at any time prior to
> the pronouncement of sentence.

21 U.S.C. § 851(a)(1).  If the United States Attorney files an information, § 851(c)(1)

provides in part that "[i]f the person denies any allegation of the information of prior

conviction, or claims that any conviction alleged is invalid, he shall file a written response to

the information." 21 U.S.C. § 851(c).

The Court of Appeals for the Third Circuit stated in *United States v. Weaver*, 267

F.3d 231 (3d Cir. 2001), that "[t]he requirements set out in § 851 are mandatory and a

district court may not impose an enhanced sentence unless the defendant has been notified

of the [previous convictions to be relied upon]." *Id.* at 246.  (citation omitted).  *Weaver*

further explained that

> [w]e have not had occasion to specifically address the sufficiency of notice
> under § 851. However, we are guided by rulings of our sister courts of appeals
> in assessing the adequacy of a § 851 information. While continually
> emphasizing the need for strict compliance with § 851(a)(1)'s filing and service
> requirements, *e.g., Harris v. United States*, 149 F.3d 1304, 1307 (11th
> Cir.1998) . . . , those courts requiring strict compliance have drawn a distinction

between the strict *procedural* requirements regarding the giving of notice, such as service and filing, which are explicit in the statute, and the precise *information* that must be included in an information, which the statute does not specify. Courts have often found that the statute permits more flexibility with respect to the latter. *E.g., United States v. Hamilton*, 208 F.3d 1165, 1168–69 (9th Cir.2000) . . . ; *United States v. Lawuary*, 211 F.3d 372, 376 (7th Cir.2000).

> Rather than focusing on exactly what information the government must provide in a § 851(a)(1) information, courts have instead analyzed whether the purpose of § 851(a)(1)—providing a defendant with sufficient notice to comply with due process—has been satisfied. Accordingly, "[o]ur inquiry must be whether the information which was filed provided [the defendant] reasonable notice of the government's intent to rely on a particular conviction and a meaningful opportunity to be heard," *Perez v. United States*, 249 F.3d 1261, 1266 (11th Cir.2001), and we must be careful not to "elevat[e] form over substance" in doing so. *King*, 127 F.3d at 489. . . . Hence, the question is whether any of the government's errors rendered the notice constitutionally lacking. *United States v. Steen*, 55 F.3d 1022, 1027 (5th Cir.1995) ("[A] district court may enhance a defendant's sentence, as long as the government provides constitutionally sufficient notice of the previous convictions through an information filed prior to trial."). We note, also, that § 851(a)(1) specifically provides that "[c]lerical mistakes in the information may be amended at any time prior to the pronouncement of sentence."

*Weaver*, 267 F.3d at 247.

Section 851 does not define "clerical error." However, *Weaver* considered the meaning of this term and looked to other sources to inform the analysis, i.e., "the weight of authority in other contexts." *Id.* 267 F.3d at 248. *Weaver* identified the following: "'Clerical mistakes in judgments, orders or other parts of the record and errors in the record *arising from oversight or omission* may be corrected . . . ,'" *id.* (quoting Fed. R. Crim. P. 36 (emphasis added in *Weaver*)); "courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or

mistake,'" *id.* (quoting *American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145

(1958); and "clerical errors 'must be in the nature of recitation' and 'not errors of substantive

judgment,'" *id.* (quoting *Jones v. Anderson–Tully Co.,* 722 F.2d 211, 212 (5th Cir.1984)).

    *Weaver* specifically considered § 851 error in three prior convictions relied upon by

the government to enhance the defendant's sentence. The government gave notice of

a July 3, 1975, conviction for involuntary manslaughter, a "November 21, 1977, conviction

for armed robbery, and a June 19, 1989, conviction for armed robbery. 267 F.3d at 246.

The Circuit Court first concluded that the original notice sent to the defendant indicating that

his July 3, 1975, conviction was for "involuntary manslaughter," when it was actually for

"voluntary manslaughter," was a clerical error which the government had corrected with its

amended notice identifying the crime relied upon to be voluntary manslaughter. *Id.* at 247-

48 (citing *United States v. King*, 127 F.3d 231, 489 (6th Cir. 1997) (determining that

incorrect date of prior conviction included in information is clerical mistake as referenced

in § 851(a)(1))).

    Second, the original notice sent to the defendant indicated that one of the prior

convictions that the government would rely upon was his November 21, 1977, conviction for

armed robbery when, in fact, there was no crime in Pennsylvania entitled "armed robbery" in

1977. *Id.* at 246.  The government corrected the error that there were two robberies rather

than one in its amended notice, and the Court found this appropriate in that the mistake

could be classified as clerical. *Id.* at 248.  Considering the errors "technical," *Weaver* also

found that the continued use of the crime of "armed robbery" as a relied upon conviction in

the amended notice did not render the notice constitutionally insufficient in that the

amended notice identified the correct date of conviction and the defendant's certified

convictions were attached to the amended notice. *Weaver* noted that the defendant's

pretrial filings further indicated that "he was well aware of the prior convictions that the

government was relying upon, further weakening his claim that he lacked sufficient

information to him on notice." *Id.* at 249 (citing *United States v. Mack*, 229 F.3d 226, 231–

32 (3d Cir.2000) (considering actual notice as indicative of constitutionally adequate notice

in context of different statute). Finally, *Weaver* noted that

> [s]ome element of confusion or lack of specificity has not rendered notices
> deficient in previous cases. *E.g., United States v. Gonzalez–Lerma*, 14 F.3d
> 1479, 1485 (10th Cir.1994) (upholding information with no prior case number,
> date or specific place of conviction); *United States v. Campbell*, 980 F.2d 245,
> 251 (4th Cir.1992) (upholding enhancement despite error in statutory section
> of previous conviction).

267 F.3d at 249. For all of the above reasons, the Circuit Court held "that the government's

information regarding Weaver's November 21, 1977, conviction was sufficient to 'signal[ ]

the government's intention to rely upon a particular prior conviction.'" *Id.* (quoting

*Gonzalez–Lerma,* 14 F.3d at 1486).

Finally, as to the defendant's June 19, 1989, armed robbery conviction, the Circuit

Court rejected the defendant's argument that "because his convictions for armed

robbery and criminal conspiracy on June 19, 1989 were later vacated, the government listed

nullified convictions." *Id.* at 249-50. *Weaver* found the argument to be without merit

because

> the convictions were vacated July 2, 1997 and were re-entered, after a guilty
> plea, under the same criminal docket number on July 2, 1997. Hence, the only
> error is listing the wrong date of conviction. We classify this as nothing more
> than a clerical mistake that, like the other errors we have addressed, was
> corrected in the amended notice.

*Id.* at 250. Defendant also argued that the notice concerning his June 19, 1989, armed

robbery conviction was inadequate because "he was not convicted of armed robbery on that

date, but rather of two separate charges—robbery and criminal conspiracy—relating to the

robbery of two banks on the same day." *Id.*  *Weaver* applied the same analysis as to the

defendant's claimed error related to his November 21, 1977, armed robbery convictions,

"that is, we are persuaded that the government's information was sufficient to 'signal[ ] the

government's intention to rely upon a particular prior conviction.'"  *Id.* (quoting *Gonzalez–*

*Lerma*, 14 F.3d at 1486). Thus, the Circuit Court found that the defendant received

adequate notice that the government would rely on his July 2, 1997, robbery conviction.

> In summation, *Weaver* found
>
> that the notice was sufficiently complete to provide Weaver with satisfactory
> notice under the statute, and that the District Court was correct in not permitting
> Weaver, in effect, to take advantage of technical or clerical errors in the notice
> provided. Therefore, we hold that the District Court did not err in finding Weaver
> received adequate notice as per 21 U.S.C. § 851.

*Weaver*, 267 F.3d at 250.

Other cases shed light on the meaning of "clerical error" in the § 851 context and the sufficiency of notice. In *United States v. Kendrick*, 825 F. Appx. 77 (3d Cir. 2020), the defendant challenged his sentence on the ground that the 21 U.S.C. § 851 information filed before his plea provided constitutionally inadequate notice of the government's intent to rely on an April 1998 state drug felony conviction as the basis of a possible sentencing enhancement. *Id.* at 78. The court noted that "[i]n determining whether a § 851 information passes constitutional muster, we ask 'whether [it] ... provided [the defendant] reasonable notice of the government's intent to rely on a particular conviction and a meaningful opportunity to be heard.'" *Id.* (quoting *Weaver*, 267 F.3d at 247.) *Kendrick* went on to state that "[i]f that standard is satisfied, any errors in the information are considered '[c]lerical mistakes' which § 851 declares 'may be amended at any time prior to the pronouncement of sentence.' We have said that this applies to 'inaccurate descriptions of prior convictions.'" *Id.* at 78-79 (quoting 21 U.S.C. § 851 (a)(1); *United States v. Rivas*, 493 F.3d 131, 142 (3d Cir. 2007)).

The specific errors in *Kendrick* were that "[t]he information identified the 1998 felony's court of conviction as the "Allegheny County Court of Common Please," erroneously adding an "e" to the end of the name. It also listed the statute of conviction as 18 Pa. Cons. Stat. § 13(a)(16), which does not exist, rather than 35 Pa. Stat. § 780-113(a)(30)." *Id.* at 79. Procedurally, *Kendrick* noted that "a presentence report filed prior to both Kendrick's plea and the initial § 851 information included accurate details of the

1998 felony conviction. 825 F. App'x at 79 n.12 (citing *United States v. Wallace*, 759 F.3d 486, 496 (5th Cir. 2014) (noting that, despite a misstatement in the § 851 information, "the government correctly characterized [the defendant's] prior conviction on several other occasions").

*Kendrick* found that the "two errors squarely fell into the category of clerical mistakes." *Id.* The Circuit Panel set out the following rationale:

> the information correctly identified the date of conviction and sentence, the docket number, and the term of imprisonment imposed. Even if, therefore, the erroneous statutory citation failed to notify Kendrick of the conviction upon which the Government was relying, several indicators—including the minor misspelling of the court's name—would have conveyed reasonable notice of the Government's intentions.

*Id.* (citing *Weaver*, 267 F.3d at 247-40 ("finding sufficient notice despite the incorrect identification of a prior conviction and the combination of two prior convictions into a single nonexistent offense"); *Higgins*, 710 F.3d at 844 (8th Cir. 2013) (rejecting the defendant's argument that "because his § 851 notice misidentified his prior conviction as 'possession' rather than 'possession with intent,' it deprived him of sufficient notice of the government's intent to seek a sentencing enhancement.")). *Kendrick* further found that "the Government corrected both errors before sentencing, thus "compl[ying] with § 851(a)(1)'s requirements for the amendment of clerical errors." 825 F. App'x at 79.

In *Higgins*, a case upon which *Kendrick* relied, the Eighth Circuit described "clerical mistakes" in the § 851 context as errors "where the government's initial information still gave

the defendant reasonable notice of the Government's intent to rely on a *particular*

conviction."  710 F.3d at 844.

In *United states v. Counterman*, 846 F. Appx. 114 (3d Cir. 2021), the government

filed the information the day *after* the defendant pled guilty and the court reinforced the need

for strict compliance "with the plain words of the statute."  *Id.* at 116, 118.  *Counterman* also

noted the need for "concrete, explicit, and specific detail as to which prior conviction the

Government contemplated as a predicate."  *Id.* at 120-21.

In this case, the Government's August 12, 2024, Information provided Defendant

notice that the Government intended to rely on a Pennsylvania robbery conviction pursuant

to 18 Pa. C.S. § 3701(a)(1)(ii) for which he was sentenced to serve between 36 to 72

months on or about December 22, 2022.  (Doc. 86 at 1.)  The Information met the

procedural notice requirement that it be filed "before entry of a plea of guilty."  21 U.S.C.

§ 851(a).  On its face, the Information "stat[es] in writing the previous conviction[ ] to be

relied upon," *id.,* i.e., 18 Pa. C.S. § 3701(a)(1)(ii). However, Defendant was not convicted of

18 Pa. C.S. § 3701(a)(1)(ii) but, rather, he was convicted of 18 Pa. C.S. § 3701(a)(1)(i).

(*See, e.g.*, Doc. 208-1 at 2.)  The Government recognized this error in the Government's

Sentencing Memorandum:

> on September 10, 2025, the U.S. Probation Officer provided the Government
> with additional filed documents associated with Defendant Russin's prior
> conviction under Case No. 3356-2003, namely the criminal Information itself,
> and not just the certified judgement of conviction which had been in the
> Government's possession. In those documents, the subsection of Robbery
> which the Defendant pled guilty to was clearly identified as 18 Pa. C.S.A.

> §3701(a)(1)(**i**), not §3701(a)(1)(**ii**) as alleged in the Indictment and the Information of Prior Conviction filed in this case. The Information under Case No. 3356-2003 further demonstrates that Defendant Russin was also found guilty of two counts of Criminal Homicide under 18 Pa. C.S.A. 2501(a), as well as conspiracy and two counts of abuse of a corpse.

(Doc. 208 at 5 (emphasis added).)

The Government also recognized that 18 Pa. C.S. § 3701(a)(1)(i) could not be substituted for 18 Pa. C.S. § 3701(a)(1)(ii): although the Third Circuit has found § 3701(a)(1)(ii) to be a violent felony predicate for sentencing enhancement purposes, the "Third Circuit has not, to the Government's knowledge, ruled that subsection § 3701(a)(1)(i) is a serious violent felony for purposes of sentencing enhancements under 21 U.S.C. 841([b])(1)(B)." (Doc. 208 at 6 (citing *United States v. Henderson*, 80 F.4th 207, 209 (2023); *United States v. Harris*, 68 F. 140, 144 (3d Cir. 2023); *Borden v. United States*, 593 U.S. 420, 429 (2021)). The Government added that "[t]he Third Circuit has also found that the two criminal homicide convictions to which Defendant Russin was also convicted of under Case No. 3356-2003, are crimes of violence." (Doc. 208 at 7 (quoting *United States v. Marrero*, 743 F.3d 389 (3d Cir. 2014)).

Although the Government's Sentencing Memorandum argued that "the increased sentencing enhancements should apply to the defendant as he was on notice of a qualifying serious violent felony associated with his prior convictions in Case No. 3356-203" (Doc. 208 at 9-10), the next day the Government filed the Amended Information of Prior Conviction (Doc. 210). The Amended Information informs Defendant that "[t]he Government hereby

amends its prior Information and gives notice to the Court and the Defendant that the

Government will rely upon the defendant's prior Criminal Homicide convictions, not the

Robbery convictions, in support of the imposition in sentencing of increased punished [*sic*]

by reason of such convictions." (Doc. 210 ¶ 2.)

## A. Clerical Error

The Court will first address the Government's contention that the error of identifying

18 Pa. C.S. § 3701(a)(1)(ii) as the prior conviction it was relying on was a "clerical error"

which would allow amendment under § 851(a)(1) before sentencing.  For the reasons that

follow, the Court concludes that the Government cannot rely on the "clerical error" provision

in § 851(a)(1) as a basis to allow amendment to the August 12, 2024, Information (Doc. 86).

The principles cited in the cases reviewed above are instructive on the application of

§ 851's "clerical error" provision.  However, where those cases found the claimed errors to

be clerical errors for purposes of § 851(a)(1), the errors at issue were grounded in facts that

differ significantly from the established facts here and, because of the unique facts of this

case, a different outcome is warranted.

In the Government's Memorandum on Validity of Amended Information of Prior

Conviction, the Government acknowledges that "the notice requirements in § 851 are

mandatory and must be upheld in strict compliance."  (Doc. 212 at 9.)  The Government

then asserts that it

> has complied with the requirements of § 851, which provides that clerical errors
> can be amended until pronouncement of sentencing. For example, in

20

*arguendo*, if the original § 851 notice in this case had simply mislabeled the Docket Number but had correctly labelled the count of conviction, and then the Government sought to correct it prior to sentencing, an amended § 851 notice would not be controversial. Conversely, the original § 851 notice here correctly labelled the Docket Number, but mislabeled the count of conviction and the Government has sought to correct that notice prior to sentencing. Therefore, the amended § 851 notice is similarly valid.

Importantly, the error in the original § 851 notice has been corrected in time for the defendant to be given a meaningful opportunity to be heard on the issue, prior to his sentencing. Both the requirements of § 851 notice and the underlying intent behind § 851 notice have been fulfilled by the Government and the enhanced penalties in this case should apply.

(*Id.* at 9-10.)

In its Sentencing Memorandum, the Government states that it relied on "the certified judgment of conviction which had been in the Government's possession." (Doc. 208 at 5.) However, the hand-written state court documents upon which the Government relied (*see* Doc. 208-1 at 3-5) do not identify the subsection of Pennsylvania's robbery statute of which Defendant was convicted. Rather, the Guilty Plea, Amended Guilty Plea, and Sentencing documents merely identify Counts 4 and 5 as "Robbery." (*See id*.) Therefore, the Government, at the time of drafting the Indictment and the Information, had to look further than the documents in its possession to determine details about Defendant's Pennsylvania robbery conviction.

At the September 18, 2025, hearing, the Court asked the Assistant United States Attorney ("AUSA") to explain "how the circumstances that have developed here present a clerical error made by the Government, more specifically, the initial 851 Notice made

reference to [18 Pa. C.S.A. § 3701(a)(1)(ii)]." (9/18/25 Hr'g Tr. 8:23-9:2.) The AUSA

explained that, because the hand-written "*Shepard* documents," state only robbery for the

two robbery convictions, the Government looked at the state court docket sheet for

clarification as to what subsection of § 3701 applied here. (9/18/25 Hr'g Tr. 10:16-19.) The

docket sheet identifies the relevant statutory section to be "18 § 3701 §§ **A1I**." (*See* Doc.

216 at 1 (presented as Exhibit at 9/18/25 Hearing) (emphasis added).) The AUSA said that

this statutory identification is "written in a way that the Government read it as a 2 – (a)(2)

instead of (a)(1)(i)." (9/18/25 Hr'g Tr. 10:19-21.) The AUSA also pointed to the docket

sheet's description of the charge: "threaten/int. – which is intent – to put fear, serious bodily

harm which is a description of subsection 2, not subsection 1. Subsection 1 is causing the

serious bodily injury or harm, where Subsection 2 is threatened. So the clerical error is the

reliance on that was Subsection 2, not Subsection 1." (*Id.* 10:23-11:2.)

  *United States v. Payo*, 135 F.4th 99 (3d Cir. 2025), evaluated the district court's use

of a state court docket sheet to determine whether the defendant's prior Pennsylvania state

court robbery conviction qualified as a crime of violence for purposes of a career-offender

enhancement to his sentence. Specifically, *Payo* considered which subsection of 18 Pa.

C.S. § 3701(a)(1) the defendant had been convicted of when the Government sought to use

the state court robbery conviction as a predicate offense in the career offender context. In

assessing the application of the "modified categorical approach" to the facts of the case, the

Circuit Court discussed at length the need for the Government to identify the correct crime

of conviction and the importance of reliance on an appropriate document when seeking a

sentencing enhancement.  In reference to § 3701(a)(1), *Payo* noted at the outset of the

analysis that "the answer to that question matters a great deal" because subsection (ii) is a

crime of violence while subsection (i) may not be.  135 F.4th at 103.  *Payo* further explained

that, in the modified categorical approach,

> the parties may introduce a narrow set of reliable materials solely to help the court identify the elements that in fact sustained the conviction. *See Shepard v. United States*, 544 U.S. 13, 16, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (typical materials include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented"). . . . "The Supreme Court has repeatedly stressed that there is a 'demand for certainty' in determining whether a defendant was convicted of a qualifying offense." *United States v. Gandy*, 917 F.3d 1333, 1340 (11th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 519, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016)). To that end, *Shepard* documents must have the "conclusive significance of a prior judicial record," *Shepard*, 544 U.S. at 25, 125 S.Ct. 1254, and must "speak plainly" in establishing the elements of the underlying offense, *Mathis*, 579 U.S. at 519, 136 S.Ct. 2243.
>
> The Government "bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies." *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014).

*Payo*, 135 F.4th at 105-06.

> *Payo* set out the disclaimer found on each page of the Pennsylvania docket sheet:
>
> Neither the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports. Docket Sheet information should not be used in place of a criminal history background check which can only be provided by the Pennsylvania State Police. Moreover an employer who does not comply with the provisions of the Criminal History Record Information Act may be subject to civil liability as set

forth in 18 Pa. C.S. Section 9183.

135 F.4th at 111. *Payo* then noted that

> we need not address whether a docket sheet can ever be a *Shepard* document because this one clearly is not. It was prepared not by the convicting court but by some other entity and then made available through the Unified Judicial System of Pennsylvania Web Portal. Each page of the docket sheet also prominently declares that "[n]either the courts of the Unified Judicial System of the Commonwealth of Pennsylvania nor the Administrative Office of Pennsylvania Courts assume any liability for inaccurate or delayed data, errors or omissions on these reports." . . . The Government characterizes this warning as "boilerplate," aimed only at "protecting the courts from civil liability." . . . We are more inclined to read the warning to mean what it says: the docket sheet may be inaccurate. Because the docket sheet does not "approach[ ] the certainty of the record of conviction," it is not a *Shepard* document and the District Court erred by relying on it. *Shepard*, 544 U.S. at 23, 125 S.Ct. 1254.

*Id.* at 111-12.

The disclaimer evaluated in *Payo* is the same as that found on the Pennsylvania docket sheets upon which the Government relied in this case. (*See, e.g.*, Doc. 216-2 at 1.) In seeking clarification of hand-written *Shepard* documents, the Government relied on a non-*Shepard* document rather than seeking clarification from another *Shepard* document. In so doing, the Government encountered a facially inaccurate statutory citation: the docket sheet statutorily identified the robbery crimes of conviction to be "18 § 3701 **§§ A1I**" where the proper statutory citations of the first two subsections of § 3701(a)(1) are 18 Pa. C.S. § 3701(a)(1)(i) and 18 Pa. C.S. § 3701(a)(1)(ii).

At the September 18, 2025, Hearing, the Government first explained "the Docket Sheet is written in a way that the Government read it as 2, (a)(2)." (9/18/25 Hr'g Tr. 10:20-

21.)  When later asked why he believed the Government's error was an "oversight," the

AUSA stated:

> The oversight is we believed he was convicted of Subsection 2, not 1 because
> of the way it was described on the docket sheet. It describes Subsection 2; and
> the way it was written, it looked like a 2, instead of a 1 and a capital I. So that's
> the oversight . . . .  It's a clerical mistake.

(9/18/25 Hr'g Tr. 22:11-16.) On further explanation of why this "oversight" was a "clerical

error," the AUSA maintained that

> the clerical error was actually the docket from Luzerne County's clerical error
> because they -- while they did list it as [A1I], the way it's written looks like (a)(2).
> And then they described it as threatening serious or putting fear of bodily injury
> which is a description of Subsection 2. So that's the clerical error that the
> Government relied upon or its omission[.]

(9/18/25 Hr'g Tr. 27:11-17.)

The Government's explanations identify interpretive errors rather than clerical errors.

The Government's characterization of the state court document shows that the Government

recognized a clerical error in the state court document to which it turned to provide clarity on

Defendant's robbery crime of conviction and the Government then interpreted "1" and "I" –

the docket sheet's § 3701 "A" descriptors – to be § 3701(a)(1)(ii).  Given the importance of

identifying the relevant subsection of § 3701(a)(1) for sentence enhancement purposes, the

Government's reliance on its interpretation of a document it had recognized to be facially

flawed and lack of further investigation cannot be excused by the Government's asserted

belief that the related charge description was consistent with (a)(1)(ii) rather than (a)(1)(i).

The circumstances presented here lead the Court to conclude that the Government's error was not "'in the nature of recitation,'" but rather was an "'error[ ] of substantive judgment,'" and, therefore, not a "clerical error" for § 851(a)(1) purposes. *Weaver*, 267 F.3d at 248 (quoting *Jones v. Anderson-Tully Co.*, 722 F.2d at 212). Because the documents originally in the Government's possession did not identify the robbery crime of conviction with specificity, the Government knew that it would have to make a substantive judgment regarding the robbery statute subsection of which Defendant was convicted if it wanted to use his robbery conviction as the "prior conviction for a . . . serious violent felony" for purposes of § 841(b)(1)(B). The Government did not seek clarification in a *Shepard* document and made a substantive judgment that the Pennsylvania docket sheet, which "does not approach the certainty of the record of conviction," *Payo*, 135 F.th at 112, and which the Government recognized to be facially contradictory was sufficient to identify the pertinent robbery subsection.[2] In sum, the Government made no reasonable effort to ascertain whether the robbery crime of conviction was one for a crime of violence which could serve as a sentencing enhancement predicate by examining a reliable state source of information which was available, i.e., the Luzerne County Court of Common Pleas Information which clearly identifies "18 Pa. C.S.A. § 3701(a)(1)(i)" as the crime charged in Counts 4 and 5. (*See, e.g.*, Doc. 208-1 at 2.) Because the error in the Information was not

---

[2] The Court does not suggest that reference to a *Shepard* document is required in every circumstance.

a "clerical error," § 851(a)(1) does not allow for amendment and the Amended Information of Prior Conviction (Doc. 210) is not a valid filing. This conclusion means that the Government must rely on the August 12, 2024, Information (Doc. 86) to support a sentencing enhancement pursuant to § 841(b)(1)(B).[3]

## B. Notice

The Government argues that the August 12, 2024, Information was adequate because it put Defendant on "reasonable notice" that the Government was relying on a crime other than that identified in the Information. The Court finds this argument to be without merit.

As to the notice required pursuant to § 851, the statute itself provides that the United States Attorney must file "an information with the court (and serve a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1).

---

[3] With the determination that the Government's confusion concerning the crime of conviction based on its interpretation of state court documents does not support a finding of § 851(a)(1) clerical error, the Court notes that the caselaw cited in the text did not address a situation where the alleged clerical error could only be corrected by identifying a completely different predicate conviction as was the case here. In this case, the Government's error had broad implications. The Government misinterpreted the crime of conviction, 18 Pa. C.S. § 3701(a)(1)(i), when it sought a sentencing enhancement based on 18 Pa. C.S. § 3701(a)(1)(ii), but the Amended Information could not rely on the robbery crime of conviction because 18 Pa. C.S. § 3701(a)(1)(i) could not serve as the basis for the enhancement. Rather, to support the enhancement, the Government had to rely on a *completely different* crime of conviction and did so when it identified Defendant's criminal homicide convictions in the Amended Information. (*See* Doc. 210 ¶ 2.) The fact that the criminal homicide convictions are under the same state court docket number does not alter the fact that the conviction for criminal homicide is different from a conviction for robbery. As will be discussed in detail in the "Notice" section of this Memorandum Opinion, the need for particularity precedes the entry of a plea of guilty pursuant to § 851(a)(1) and that did not happen here.

*United States v. Weaver* stressed the importance of the analysis of "whether the purpose of § 851(a)(1)—providing a defendant with sufficient notice to comply with due process—has been satisfied." 267 F.3d at 247.  As set out above, *Weaver* specifically directed that the "inquiry must be whether the information which was filed provided [the defendant] reasonable notice of the government's intent to rely on a particular conviction and a meaningful opportunity to be heard." *Id.* (internal quotation omitted).  Thus, the Court now turns to the question of "whether any of the government's errors rendered the notice constitutionally lacking." *Id.* (citation omitted).

*Weaver* and each of the cases reviewed above emphasize the importance of notice of the particular crime upon which Government is relying. *See supra*. The cases show that the Information does not need to have the exact wording of the conviction relied upon nor does it need to have the correct statutory citation, but it must have enough to apprise the defendant with particularity of the crime upon which the Government is relying to enhance his sentence. *See supra.*

As set out above, *Weaver* determined that multiple errors were clerical but did so in a situation where the defendant's pretrial filings indicated that "he was well aware of the prior convictions that the government was relying upon, further weakening his claim that he lacked sufficient information to him on notice." 267 F.3d at 249 (citation omitted).  As to the interplay between notice and clerical error, *Kendrick* observed that, pursuant to *Weaver*, the court must ask whether the government "'provided reasonable notice of the government's

intent to rely on a particular conviction and a meaningful opportunity to be heard'[;] [i]f that

standard is satisfied, any errors in the information are considered 'clerical mistakes." 825 F.

App'x at 78-79 (quoting *Weaver*, 267 F.3d at 247; 21 U.S.C. § 851(a)(1)).  Applying this

standard, *Kendrick* found that the Information contained errors in spelling and statutory

citation, but "several indicators . . . would have conveyed reasonable notice" of the crime of

conviction upon which the government was relying, including the fact that the presentence

report filed before the defendant's § 851 information and plea contained accurate details of

the conviction at issue.  825 F. App'x at 79 & n.12.

Here, no accurate details or identification of the criminal homicide convictions

preceded Defendant's plea and there is no indication that Defendant was aware that the

Government would ultimately rely on his two criminal homicide convictions.  Therefore,

indicators of "reasonable notice" found in *Weaver* and *Kendrick* are absent in this case.

*United States v. Wilkinson*, 139 F.4th 583 (7th Cir. 2025), addressed § 851's notice

requirement in a situation similar to that presented here.  In *Wilkinson*, "the special findings

section of the indictment . . . stated that two of [the defendant's] prior state drug convictions

were relevant to determining [his] sentence," *id.* at 585, and the government relied on the

defendant's conviction for drug trafficking in the Information and his conviction for

attempting to manufacture drugs at sentencing, *id.*  By way of further background,

> the government filed an information the day before Wilkinson's change of plea
> hearing. The § 851 notice identified Wilkinson's prior drug-trafficking conviction
> as the enhancement predicate. This provided Wilkinson with notice and gave
> him an opportunity to challenge the use of this conviction to enhance his

> sentence. The government, however, did not rely on this conviction at sentencing. Instead, the government relied on Wilkinson's prior conviction for attempting to manufacture methamphetamine to argue for the § 841(b)(1)(A) sentencing enhancement.

139 F.4th at 588. The government changed the crime of conviction supporting the sentence enhancement because the parties realized before sentencing that the prior conviction relied on by the government in its § 851 notice was not a serious drug felony capable of enhancing Wilkinson's federal sentence. *Id.* at 586.

*Wilkinson* is instructive because, unlike the cases reviewed above, it considered a wholesale substitution of the crime of conviction identified in the § 851 notice with another crime of conviction after the guilty plea was entered but before sentencing. *See supra*. While *Wilkinson* did not discuss clerical error or the propriety of amendment, the Seventh Circuit's reasoning is apt:

> [t]he text of 21 U.S.C. § 851(a)(1) requires the government to file an information that identifies the particular conviction on which it intends to rely on for an enhancement. Because the government did not provide written notice of its intent to incorporate Wilkinson's attempt to manufacture conviction to seek the sentencing enhancement, before or at his plea hearing, the district court erred in finding the government provided adequate notice as required under § 851.

139 F.4th at 588.

Importantly, *Wilkinson* noted that flexibility is limited to those situations where "the defendant knew, in some capacity, what particular conviction the government sought to use to enhance his sentence before trial or before entering their plea of guilty." 139 F.th at 589.

Thus, the appropriate inquiry centers on the purposes of § 851: "(1) to give the defendant an opportunity to contest the use of his prior conviction, and (2) to allow him to intelligently decide whether to plead guilty." *Id.* Applying this framework to the facts of the case, *Wilkinson* concluded that the purposes of the statute were not met where the defendant "was never given the chance to make an informed decision of whether to enter his plea or proceed to trial concerning the particular conviction the government used to argue for a longer sentence." *Id. Wilkinson* reasoned that when the government pursues a certain conviction in the § 851 notice, the defendant

> could not have expected the government to later rely on a different predicate offense to enhance his sentence, a scenario in which "it was impossible for [the defendant] to take into account the risks and benefits of pleading guilty or risking trial with that predicate looming.
>
> For a choice in this context to be informed, the defendant must know which predicates might be used against him.

139 F.4th at 589-90.

For similar reasons, this Court disagrees with the Government that the August 12, 2024, Information provided adequate notice to Defendant. At the September 18, 2025, hearing, when asked how the August 12, 2024, Information gave Defendant notice at the time he pled guilty that the Government would be using his conviction for criminal homicide as the basis for the sentence enhancement, the AUSA responded that Defendant was "under reasonable notice -- … he was given notice that we were relying on this case to a

conviction that doesn't exist." (9/18/25 Hr'g Tr. 18:7-13.) By way of further explanation, the

AUSA asserted that Defendant

> was under reasonable notice that we were relying on that case, his murder
> case, . . . the docket that's clearly labeled. But the conviction that we cited in
> the information was just wrong. So how can we provide any notice of a wrong
> conviction? It doesn't exist. So he was under reasonable notice that we were
> relying on a conviction from that case.

(*Id.* 18:15-18.)

The Government's reasonableness argument is difficult to decipher at best. Section

851 requires the Government to "state[ ] in writing the prior convictions to be relied upon."

21 U.S.C. § 851(a)(1). As discussed above, cases consistently interpret this mandate to

require the Government to identify the *particular* conviction relied upon. *See, e.g., Weaver*,

267 F.3d at 247. The scenario proffered by the Government places a burden on a

defendant which the statute does not contemplate. The Government suggests that a

defendant convicted of state court robbery is responsible for extensive knowledge about his

conviction and the law. To deduce as suggested, Defendant would have had to know the

following: 1) the subsection of § 3701 he was convicted under when his guilty plea and

sentencing documents identified only "Robbery" as the crime in the relevant counts; 2)

section 3701(a)(1)(i) could not serve as a sentence enhancement predicate; 3) the

Government misinterpreted a docket sheet and chose the wrong subsection of the statute of

conviction to include in the Indictment and Information; and 4) a *different* crime of conviction

could serve as a predicate offense.  No case cited supports this proposition or anything close to it.

Because the identification of the prior conviction portion of § 851(a)(1) would be rendered meaningless if the Government's interpretation of reasonable notice were adopted, the Court declines to do so.  First, as set out above, the explanation proffered by the Government puts the burden on Defendant to make a series of factual and legal deductions: this is an improper shifting of the burden of showing that a sentencing enhancement is warranted, *see supra*, and it is a labyrinthine route to discerning the "previous convictions to be relied upon" pursuant to § 851(a)(1), a route which is untenable given the need for particularity when it comes to identifying the predicate crime of conviction in the information.  *See supra*.

Second, as in *Wilkinson*, the purposes of § 851, "(1) to give the defendant an opportunity to contest the use of his prior conviction, and (2) to allow him to intelligently decide whether to plead guilty," 139 F.4th at 589-90, are not met here because Defendant "was never given the chance to make an informed decision of whether to enter his plea or proceed to trial concerning the particular conviction the government used to argue for a longer sentence." 139 F.th at 589.  The Government argues otherwise:

> the error in the original §851 notice has been corrected in time for the defendant to be given a meaningful opportunity to be heard on the issue, prior to his sentencing. Both the requirements of §851 notice and the underlying intent behind §851 notice have been fulfilled by the Government and the enhanced penalties in this case should apply.

33

(Doc. 212 at 10.)

The Government's argument is unavailing. An opportunity to be heard "prior to his *sentencing*" (*id.* (emphasis added)) does not satisfy the requirements of the § 851 notice or the underlying intent of the notice requirement.  Section 851 requires notice of the previous conviction to be relied upon "before the entry of a plea of guilty." 21 U.S.C. § 851(a)(1). Here, Defendant did not have the opportunity to contest the use of two convictions for criminal homicide before he entered his guilty plea and, more importantly, he was not able to intelligently decide whether to plead guilty.  The latter is significant because the potential ramifications at sentencing of two predicate convictions for criminal homicide are far different from a predicate conviction for robbery.  The distinction may have given rise to a different calculation on Defendant's part as to whether to plead guilty or go to trial. Therefore, as in *Wilkinson*, "it was impossible for [Defendant] to take into account the risks and benefits of pleading guilty or risking trial with [criminal homicide] predicate[s] looming." 139 F.4th at 590.  In sum, because Defendant did not know the predicates that would be used against him and his choice to plead guilty cannot not be considered "informed," *id.*, the Information did not provide the notice required pursuant to § 851(a)(1).

## IV. CONCLUSION

For the forgoing reasons, the Court concludes that the neither the pre-plea Information (Doc. 86) nor the post-plea Amended Information of Prior Conviction (Doc. 210) satisfy the requirements of 21 U.S.C. § 851(a)(1) and, therefore, Defendant is not subject to

the sentencing enhancements set out in 21 U.S.C. § 841(b)(1)(B), i.e., Defendant is not

subject to a mandatory minimum sentence of ten years. A separate Order will enter.

Robert D. Mariani
United States District Judge